IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID PERDUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 14-044-SLR |
| | ) |
| CITY OF WILMINGTON, DELAWARE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

1. **Introduction.** Plaintiff David Perdue ("plaintiff") proceeds pro se and has been granted in forma pauperis status. Upon screening, the original complaint, filed January 15, 2014, was dismissed and plaintiff was given leave to amend. Plaintiff filed an amended complaint, but it did not contain a prayer for relief and it was also dismissed. Plaintiff was again given leave to amend. (D.I. 11) Plaintiff recently filed a prayer for relief. (D.I. 12) The court considers the amended complaint (D.I. 9) and the amended complaint that contains the prayer for relief (D.I. 12), together, as the operative pleading.

2. Plaintiff alleges violations of: (1) the First, Fourth, and Fourteenth Amendments to the United States Constitution; (2) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and specifically §§ 3604, 3604(d), (f)(1), (f)(2), and (f)(3)(B), and its regulations 24 C.F.R. §§100.60(b)(4) and (b)(5), § 100.65, §§100.70(a) through (c), and (d)(5), and §§ 100.500(a) through (c); and (3) the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, *et seq.*, and its regulations 28 C.F.R. § 35,[1] *et seq.*, and specifically 28 C.F.R. § 35.100,[2] and 28 C.F.R. §§ 35.134(a) and (b), all in relation to condemnation of properties where he resided, as well as retaliation. (D.I. at 3-4; D.I. 12)

3. **Standard of Review**. A federal court may properly dismiss an action sua sponte under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

4. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.

---

[1] The purpose of Part 35 part is to effectuate subtitle A of Title II of the ADA (42 U.S.C. 12131), which prohibits discrimination on the basis of disability by public entities. 28 C.F.R. § 35.101.

[2] There is no such section. The Code of Federal Regulations Title 28, Chapter I, Part 35 begins at 28 C.F.R. § 35.101.

2

Neitzke, 490 at 327-28; Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989); see, e.g., Deutsch v. United States, 67 F.3d 1080, 1091-92 (3d Cir. 1995).

5. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

6. A well-pleaded complaint must contain more than mere labels and conclusions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." Iqbal, 556 U.S. at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679 (quoting

3

Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

7. **Allegations in the Amended Complaint**. Plaintiff alleges that he is disabled by reason of depression, substance abuse, bi-polar disorder and PTSD. He is an associate of Disabled, Disadvantaged Delawareans also known as the 3D Foundation ("3D"),[3] and lived on properties owned by 3D located at 1028 West Third Street ("Third Street house") and 1313 Maryland Ave. ("Maryland Avenue house"), both in Wilmington, Delaware. Residents of the homes are not "blood-related" but consider themselves family. Residents share expenses of the houses, including mortgage payments, utility payments, taxes, and repairs. The home needs at least five to eight residents who pay an agreed amount to make the home safe, affordable, and supportive of recovery. (D.I. 9, ¶¶ 1-3)

8. In 2011, defendant Jessica Ramos-Valesquez ("Ramos"), a City of Wilmington[4] inspector/supervisor in the Department of Licenses and Inspections (L & I Department), inspected the Third Street house, issued violations and posted an "unfit" sign. Ramos did not return to re-inspect the premises to lift the unfit status despite repeated requests from 3D. When plaintiff moved into the Third Street house in 2012, the house remained in an "unfit" status. On an unnamed date, Ramos completed a compliance inspection, acknowledged compliance for the existing violations, verbally

---

[3] Russell (Scott) Walker ("Walker") founded 3D. (D.I. 9, ¶ 8)

[4] The City of Wilmington (City of Wilmington") is also a named defendant.

4

added new citations, and the Third Street house remained "unfit." Plaintiff alleges that Ramos and City of Wilmington refused all requests to re-inspect the Third Street house for compliance. The amended complaint alleges the foregoing violates 24 C.F.R. § 100.70(d)(5). (*Id.* at ¶¶ 6-7)

9. In March 2013, an individual living in another 3D home sued the City of Wilmington for housing violations. Plaintiff alleges that two months later, on May 22, 2013, Ramos and defendant Anthony Goode (Goode"), the fire chief for the City of Wilmington, and other City employees retaliated when they "raided" the Third Street house. Goode telephoned Walker and indicated that he was shutting down the Third Street house. Plaintiff alleges that Goode, Ramos, and other City workers entered the Third Street house without a warrant or consent with the intent to evict the residents. Goode indicated that he had received complaints (i.e., missing smoke detectors and a blocked fire escape),[5] that the 3D houses would be shut down one-by-one, and that 3D could not house disabled people at the Third Street house. The residents were removed from the home and plywood was nailed over the front door. No one was allowed to replace the smoke detectors or unblock the fire escape. Goode subsequently proclaimed an emergency and ordered the electricity and gas shut off at the Third Street house. Plaintiff alleges that the actions taken on May 23, 2013 denied him housing because of his disability and his association with disabled persons, not

---

[5]Goode indicated that a resident of the Third Street house had called and complained there was a blocked fire escape and missing smoke detectors. Plaintiff alleges that the complaints were made by a mentally ill person who was a "temporary, non-paying shelter occupant of the home because she was homeless." Plaintiff further alleges that the person was told to leave because she was engaging in criminal activities and made the complaints in retaliation for her eviction. (*Id.* at ¶ 10)

5

because there was any imminent danger of fire.  Plaintiff alleges that, since 2011, it has been the City of Wilmington's intent to stop mentally disabled or mentally ill persons from living in homes that are occupied by disabled persons and that it is clear through City employees' words and actions that the City of Wilmington does not want mentally ill or mentally disabled persons living in an arrangement like plaintiff's home.  The amended complaint alleges the foregoing violates 42 U.S.C. §§ 3601, 3604(d), 3604(f)(1)(A), (B), and (C) and (f)(2), and 12101, 24 C.F.R. §§100.60 (4) and (5), 100.65, 100.70(a), (b), (c), and (d) (4) and (5), and the Fourth Amendment to the United States Constitution.  (*Id.* at ¶¶ 8-14)

10.  After being evicted from the Third Street house, plaintiff was temporarily housed at the Maryland Avenue house.  On May 27, 2013, Goode, firemen, and City inspectors came to the house and Goode informed plaintiff he was shutting down the house "for smoke detectors."[6]  Goode was wearing a firearm.  Plaintiff alleges that Goode demanded that he open the building for inspection, that the assistant fire chief (not a named defendant) coerced him to leave the Maryland Avenue house, and that he complied under duress.  Inspector Anthony Rivera ("Rivera") wrote twenty-five code violations.[7]  At that time, Goode told plaintiff and others that he was going to shut down all of the 3D houses and that he did not care if the residents were disabled or not.  The

---

[6]Plaintiff alleges that the same person who made the Third Street house complaints, also complained that the Maryland Avenue house lacked smoke detectors. (*Id.* at ¶ 15)

[7]Rivera is not a defendant.

6

amended complaint alleges the foregoing violates 28 C.F.R. § 35.134(a) and (b)[8] through retaliation, threats, intimidation, and coercion, as well as the Fourth Amendment to the United States Constitution. (Id. at ¶ 15)

11. The amended complaint next alleges that Ramos, through the zoning director, demanded that either 3D or plaintiff obtain a business license to occupy plaintiff's home (the amended complaint does not identify the particular property but it appears it is the Third Street house). The type of City business license required restricts the number of occupants in a dwelling to a family defined as no more than four unrelated persons per dwelling.[9] In 2011, 3D made a request to Ramos for the City to relax the occupancy rule as a reasonable accommodation for 3D's disabled residents. Ramos told plaintiff that she would not inspect the house for compliance until a business license was obtained. Plaintiff's home was cited for overcrowding for violating the number of people allowed in a dwelling. Plaintiff alleges that no other owner of a family home is required to obtain a City business license and that the requirement unlawfully restricts housing choices because of a disability. The amended complaint alleges that the foregoing violates 42 U.S.C. §§ 3601, 3604(f)(3)(B), 3605 and 1201; 24 C.F.R. §§ 100.500(a), (b), and (c), 100.70(d)(4) and (5), and the Fourteenth Amendment to the United States Constitution. (Id. at ¶ 16-18)

---

[8] A regulation that prohibits retaliation against individuals who exercise their rights under the ADA.

[9] As previously discussed, the home needs at leave five to eight residents for it to be economically viable.

7

12. Plaintiff alleges that in 2013, the Wilmington City Council adopted a moratorium on all group homes located in the city for the mentally handicapped.[10] Plaintiff alleges that this "singles out living arrangements for the disabled for negative special treatment." The amended complaint alleges that the foregoing violates 42 U.S.C. §§ 3601, 12101, 24 C.F.R. §100, *et seq.*,[11] and 28 C.F.R. § 35, *et seq.*, as well as plaintiff's rights to equal protection under the Fourteenth Amendment because the moratorium's basis is "disability." (*Id.* at ¶ 19)

13. Plaintiff alleges that Ramos, the City of Wilmington, and defendant Jeffrey Starkey ("Starkey"), at the time the Commissioner of the L & I Department, have a practice or policy of "over-ticketing" for code violations after they receive a complaint and gain entry to a home. Plaintiff alleges that his home was singled out for over-ticketing and that Ramos over-ticketed the house for trivial and unnecessary repairs to force him or 3D to spend monies on repairs knowing that it would create an impossible burden and result in the premises remaining in an "unfit" status or bankrupt the home and force a Sheriff's sale. Plaintiff alleges that the policy is unnecessary and harms handicapped persons who need affordable housing that is in short supply in Wilmington. The amended complaint alleges that the foregoing violates 42 U.S.C.

---

[10] Public records of the City of Wilmington indicate that on April 18, 2013, an ordinance was passed by the City Counsel that urged "the Governor of the State of Delaware and the Secretary of Health and Social Services to issue a six month moratorium on funding any additional newly created non-profit group homes within the City of Wilmington," and recommended "that a more stringent review process be adopted for all existing group homes currently funded by the State of Delaware." *See* Res. 13-032, as amended, City of Wilmington, Delaware (Apr. 18, 2013).

[11] The Code of Federal Regulations Title 24, Subpart B., Chapter I, Subpart A, Part 100 begins at 24 C.F.R. § 100.1.

8

§ 3601, *et seq.*, and 24 C.F.R. §§ 100.70(d)(5) and 100.500(a), (b), and (c). (*Id.* at ¶ 20)

14. The amended complaint alleges that Starkey and Goode worked together to condemn and evacuate homes in Wilmington. Plaintiff alleges that Starkey is liable for the actions of his subordinates and is responsible for training and supervising his subordinates to make them aware of the protections afforded to minorities by the FHA. The amended complaint alleges that the foregoing violates 42 U.S.C. § 3601, *et seq.*, 24 C.F.R. § 100 *et seq.*, and 28 C.F.R. § 35 *et seq.* (*Id.* at ¶ 21)

15. Plaintiff filed a housing discrimination complaint, based on disability, with the State of Delaware Human Relations Commission. Defendant Director Ramona Fullman ("Fullman") dismissed the complaint on the grounds that plaintiff failed to cite a statute. Fullman would not return plaintiff's telephone calls when he asked for an explanation for the dismissal. Plaintiff alleges that Fullman does not investigate fair housing complaints when based upon a mental disability. Plaintiff alleges that Fullman denied his right to access the courts in violation of the First Amendment and that she violated his Fourteenth Amendment right to equal protection when she rejected the complaint because of his mental disability. The amended complaint further alleges that Fullman denied plaintiff services because of a mental disability in violation of 42 U.S.C. § 12101, *et seq.* and 28 C.F.R. 35.100, *et seq.* (*Id.* at ¶ 22) Finally, plaintiff alleges that all defendants have denied his rights under the First Amendment to free association. (*Id.* at ¶ 23) Plaintiff seeks compensatory damages. (D.I. 12)

16. **Discussion**. The complaint contains numerous claims. Plaintiff's claims for violations of the First, Fourth, and Fourteenth Amendments are civil rights claims.

9

Although plaintiff does not mention the statute, civil rights claims are typically raised pursuant to 42 U.S.C. § 1983.[12] He also raises claims under the Title II of the ADA, and the FHA.

17. **Statute of Limitations**. Plaintiff filed the original complaint on January 15, 2014. The amended complaint complains of actions taken as far back as 2011. For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In addition, "the statute of limitations applicable to claims under Title II of the ADA . . . is the statute of limitations for personal injury actions in the state in which the trial court sits." *Disabled in Action v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Similarly, the FHA expressly sets forth a two-year statute of limitations. *Braun v. Gonzales*, 557 F. App'x 176, 179 (3d Cir. 2014) (unpublished) (quoting 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence . . . of an alleged discriminatory housing practice . . . ."). Accordingly, as is apparent from the face of the amended complaint, all claims raised prior to January 15, 2012 are time-barred and, therefore, will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). See *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (unpublished) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)) ("[W]here the statute of limitations defense is

---

[12]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

10

obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, *sua sponte* dismissal under 28 U.S.C. § 1915 is permissible."

18. **Quasi-Judicial Immunity**. Plaintiff alleges that he was denied his right to access the courts in violation of the First Amendment because his housing discrimination complaint was dismissed and Fullman would not return his telephone calls to explain the dismissal. He further alleges that Fullman violated his right to equal protection under the Fourteenth Amendment and the ADA when she rejected his complaint because of his mental disability. (D.I. 9, ¶ 22) Fullman is the Director of the Delaware Division of Human Relations and the State Human Relations Commission ("Commission"). *See* http://statehumanrelations.delaware.gov/director.shtml (Sept. 30, 2014). The Commission is a quasi-judicial agency which rendered a decision on plaintiff's housing discrimination complaint. *See Lindsay v. Beaver Brook Section One Inc.*, 322 A.2d 13 (Del. 1974).

19. Fullman is immune from suit by reason of quasi-judicial immunity. Judicial immunity is afforded to individuals who perform ministerial duties of a judicial nature pursuant to a statute, *see Smith v. Rosenbaum*, 460 F.2d 1019 (3d Cir. 1972); *accord Scott v. Dixon*, 720 F.2d 1542 (11th Cir. 1983), or who perform acts which are judicial in nature and integral to the judicial process. *See Waits v. McGowan*, 516 F.2d 203, 205-06 (1975); *Rosenbaum*, 460 F.2d at 1020; *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972). Fullman has judicial immunity as the alleged actions taken by her were plainly integral to the judicial process. Accordingly, the claims against her will be dismissed as she is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

20. **Free Association**. The amended complaint alleges that, "all defendants denied plaintiff his First Amendment rights of free association." (D.I. 9, ¶ 23) "The First Amendment protects only the right to associate for the purpose of engaging in activities protected by the First Amendment--speech, assembly, the right to petition, and free exercise of religion." *Dotzel v. Ashbridge*, 306 F. App'x 798, 802 (3d Cir. 2009) (unpublished) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). Plaintiff's claim fails to the extent that he alleges the limitation of the number of people allowed to dwell in one household violates his right to freedom of association. *See Doe v. City of Butler, Pa.*, 892 F.2d 315, 322 (3d Cir. 1989) (zoning regulation which limited transitional dwellings to six persons and supervisory family or person did not violate First Amendment right to freedom of association). Therefore, the court will dismiss the free association claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

21. **Equal Protection**. Plaintiff alleges that Ramos, the City of Wilmington, and Starkey violated his right to equal protection under the Fourteenth Amendment when they required either 3D or plaintiff to obtain a business license for occupancy of a multi-person house. Plaintiff alleges that he is a associate of 3D, who owns the house. 3D had asked the City to relax the occupancy rule as a reasonable accommodation to 3D's disabled residents. Plaintiff alleges that no other owner of a family home is required to obtain a business license and that this requirement violates the Fourteenth Amendment. The claim fails for plaintiff's lack of standing.

22. "The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

343 (2006) (citations omitted). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Also, "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.*, 547 U.S. at 352 (citations omitted).

23. The Third Circuit determines the appropriateness of third-party standing with a three part test. *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (citations omitted). "To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Id.* Here, plaintiff alleges an injury in that he was not allowed to occupy a home due to the business license requirement and he alleges a close relationship with 3D, as its associate. However, the amended complaint fails to allege that 3D faced some obstacle to pursuing its own claims. The claim is frivolous and, therefore, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

24. **Americans with Disabilities Act**. The court liberally construes the amended complaint and finds that plaintiff has adequately alleged violations of Title II of the ADA against the City of Wilmington for failure to accommodate his alleged disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. However, the Title II ADA claim fails to the extent plaintiff attempts to impose liability for damages upon the individual defendants

13

because they are not "public entities" within the meaning of the ADA. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *see also Glenn v. McGrady*, 2014 WL 939507, at *5 (M.D. Pa. 2014) (the proper defendant in a Title II claim is the public entity or an official acting in his official capacity). Plaintiff is unable to state a Title II ADA claim against defendants in their individual capacities and, therefore, the court will dismiss such claims as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

25. **Retaliation**. Plaintiff alleges Ramos, Goode, and others retaliated against him as a result of a lawsuit filed by someone else against the City of Wilmington for housing violations. The alleged retaliation occurred when the Third Street house was raided on May 22, 2013 and when the Maryland Avenue house was inspected and shut down on May 27, 2013. Plaintiff cannot state a retaliation claim based upon his relationship with 3D and lawsuits filed by other individuals. The Third Circuit Court of Appeals has held that third-party retaliation is not actionable. That is, one cannot claim that he was retaliated against because a friend or relative engaged in protected activity. *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 570 (3d Cir. 2002). All retaliation claims are legally frivolous and, therefore, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

26. **Conclusion**. For the above reasons, the court will dismiss: (1) all claims for acts taking place prior to January 15, 2012 as time-barred and as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); (2) all claims against defendant Ramona Fullman pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) as she is immune from suit; (3) the First Amendment free association claim, Fourteenth Amendment due process claim, and retaliation claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and (4) the

14

and (4) the Title II ADA claims against the individual defendants as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

27. The court will allow plaintiff to proceed with: (1) Fourth Amendment claims of unreasonable search and seizure against defendants Anthony Goode and Jessica Ramos-Valesquez; (2) Fair Housing Act claims against defendants Jessica Ramos-Valesquez, the City of Wilmington, and Jeffrey Starkey; (3) selective enforcement claims against Jessica Ramos-Valesquez, Anthony Goode, the City of Wilmington, and Jeffrey Starkey; and (4) Title II ADA claim against the City of Wilmington. A separate order shall issue.

_____
UNITED STATES DISTRICT JUDGE

DATED: October __8__, 2014